CASE 58—PETITION ORDINARY—APRIL 1.

# Thompson vs. Poston.

### APPEAL FROM CLARKE CIRCUIT COURT.

1. A jury may be allowed, after retiring, to return into court to inquire of a witness what he *had* testified or said in any part of the testimony he had given, and cross-examination would be improper. In rare cases, a jury might, after retirement, be permitted to re-examine a witness respecting a fact not before testified to, where the court is satisfied that probable injustice would otherwise be done; but'-in such case cross-examination would be a clear right.

2. A bill drawn for the accommodation of the drawee, for the purpose of sustaining his credit and to aid him in his banking operations, is not enforcible as against the drawer, except by a holder for value without notice of such purpose. A pawnee who received the bill as collateral security for debt, is not such holder.

3. Where the drawee of such bill, after making an assignment for the benefit of all his creditors, delivered it in payment to one of them who received it with notice of the assignment, the payment was fraudulent and void as to other creditors and as to the drawer.

4. Retention of possession of the bill by the drawee, without the payee's knowledge, was no delivery to the latter, and the subsequent actual delivery did not so retroact as to vest the title at any previous time.

5. The fact that when the payee received the bill, she knew the drawer had failed, and had not delivered it "in his usual course of business," was enough to put her upon inquiry, and to subject her to all the defenses which the drawer could make, as to the consideration, against a party with actual notice.

SIMPSON & SCOTT, for appellant, cited 16 *B. M.*, 201; *Civil Code., sec.* 351.

J. B. HUSTON, on same side, cited *Edwards on Bills*, 323.

HUNT & BECK, for appellee, cited 2 *Litt.*, 248; 8 *U. S. An. Dig.*, 583; 1 *Greenl. Ev., sec.* 421; 1 *Stark. Ev., p.* 92; 2 *Roll. Abr.*, 676; 18 *B. M.*, 295; 3 *Met.*, 313; 1 *Met.*, 11; *Civ. Code, sec.*, 351; *Edwards on Bills*, 323; 2 *Met.*, 535.

C. EGINTON on same side.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In this action, Mary Poston sought and obtained a judgment against Harrison Thompson, for the amount of a protested bill of exchange.

The appellant was both creditor and surety of the appellee's brother, Henry G. Poston, who was in danger of failing in his business of private banking in Winchester, and the appellant, apprehensive of thereby losing nearly $18,000, and being, therefore, the more anxious to prop his credit and promote his success, was induced, some time in March, 1861, to sign his name as the drawer of a bill of exchange, marked "$3,000," and blank as to time, date, and other parties; and H. G. Poston, to whom he delivered it, *expressly promised to devote the proceeds to his banking business*.

On the 20th of April, 1861, H. G. Poston filled up the bill by making himself drawee and acceptor, and his said sister payee, at eight months' credit; and, as thus completed, he locked it in his safe or vault inclosed in an envelope directed to her.

On the 7th of May, 1861, he conveyed to a trustee, for the benefit of all his creditors, the whole of his estate of every kind, and which will yield but little, if anything, over fifty per cent. And, some days after that assignment was known to his said sister, he sent the bill enveloped as aforesaid to her without any explanation. The messenger who delivered it to her, testified that she held a note on her said brother for more than $3,000; that when she saw the bill she seemed surprised, and inquired what it meant, and he told her that if Thompson should be good, of which neither he nor she had any knowledge, she might make out of him some of her debt; but that he saw no note, nor heard of any credit on it, nor of any receipt for the amount of the bill. She, herself, testified that she had heard nothing about the bill until the messenger delivered it; that she then knew that her brother had failed, and had heard "that he had made her safe, but did not know how; that she and he *had no agreement or understanding about the bill, either before or since*" she received it; that she had not given any receipt for the bill, nor credit for it on the note, and "sent

no word or message about it to her brother. She thought, if she got it, it would be that much of her debt." This is the whole effect of her testimony in chief. But, some time after the jury had retired and consulted on the evidence, they came into court and announced a wish to ask her a question; and this, though objected to, being allowed, they inquired of her whether she had taken the bill as a payment of so much of her brother's note to her, and she answered that she had. Thereupon, appellant's counsel asked leave to cross-examine her on that question; but the court refused to permit it, and they excepted. And the jury soon returned a verdict against the appellant for the amount of the bill for which the court gave judgment.

The course of the circuit judge on this last movement presents an important queston of practice, which is the first we shall consider.

It would have been permissible, and perhaps necessary, for the jury to inquire of the witness what she had testified, or what she *had said in* any part of the testimony she had given; and then no cross-examination would have been proper. And, in some rare cases, after retirement, a jury might be permitted to re-examine a witness respecting a fact not testified to in the first examination. But then, cross-examination would always be a clear and equal right; and this inconvenience, and the danger of fraud and surprise resulting from such irregularity of post-examination on a new question, require that, before it should be allowed, the sound discretion of the court should be addressed by a peculiar reason indicating that, without it, *probable* injustice would be *unreasonably* done.

In this case, whether the appellee held the bill as payment, or only as security *pro tanto*, seemed to be the decisive question; and this fact was clearly disclosed to her by the instructions of the court, and the arguments of counsel after she had originally testified. In that testimony, she had neither said nor intimated that she had taken it as payment, and the facts therein verified conduced inevitably to the conclusion, of both law and fact, that half of her debt being secured by the general assignment, she retained the assignor's note without any credit for

the bill of doubtful availability, and that, of course, her acceptance of the bill was for additional security merely. Payment was a fact she had not testified to; and, consequently, the question propounded by the jury was, not to certify any fact she had stated, but only to enable her to state a new fact which she had before not only pretermitted altogether, but evidently ignored or denied. No reason appearing for such interrogation, the court erred in permitting it. But, had its allowance been proper, reciprocity, fairness, and the reason and equality of the law, entitled the appellant to a cross-examination on the new fact to which she thus, for the first time, had testified. They had as clear a right to this, then, as they would have had if she had made the statement before the jury had retired. This error was important on wholesome practice, and decidedly prejudical to the rights of the appellant, against whom the verdict must have been rendered on that *ex parte* statement. And, for this alone, were there no other error, the judgment should be reversed.

But there are other essential errors which, as there may be another trial, we will briefly notice.

There is neither proof nor presumption of appellant's consent to the use made of the bill. It clearly appears that the bill was drawn for the accommodation of H. G. Poston, and for the special and sole purpose of sustaining his professional credit, and aiding him in his banking operations. The legal consequence of this state of case is, that it is not enforcible as between drawer and drawee; nor as between drawer and payee, unless the latter purchased it *bona fide* for a valuable consideration, and without notice of the purpose for which it was drawn. And a payment of a pre-existent debt was inconsistent with the vital spirit of the drawer's sole object.

A pawn of the bill as a collateral security for debt did not divest the appellee of any right or thing of value, nor put her in the attitude of a holder for a valuable consideration parted with by her; and, consequently, she will be in no worse condition if she can never enforce it than she was in when she received it, and the appellant's defense is as available without as with notice to her of the perversion of the purpose for

which alone he drew it. And even if she took it as a payment without notice of the purpose for which it was drawn, but with notice, as proved, that the drawee had failed and made a general assignment of all his estate for distribution *pro rata* among all his creditors, of whom she was one, the delivery of the bill to her as a preferred creditor was a constructive fraud on the other creditors, which made the pretended payment void as to the appellant as well as to other creditors, if her ostensible title to the bill was acquired by the delivery of it after that assignment. And it seems to us that no title passed to her until she had accepted it. Such commercial paper passes by delivery, and could not pass by contract without the knowledge and consent of both parties. And, moreover, in this case, the deposit of it by the drawee in his own safe or vault, was not only no delivery to her, but rather implied that he had not then determined what disposition he would finally make of it, or whether he would use it at all—his ulterior determination depending on the contingency of his ability to continue his banking business; and his making that deposit of it nearly a month before his assignment, and his retaining it, without her knowledge of it, several days after the assignment, fortify that *prima facie* presumption, and rather indicate that he intended, if he could go on with his business, to procure her indorsement to raise the money to aid him in that business. But, whatever he may have intended, his retention of the possession of it without her knowledge of it was no delivery of it to her, and imparted no vitality to it as an obligatory contract; and the delivery after the assignment could not availably retroact so as to vest in her any title from the date of the deposit. Moreover, the fact that, when she received the bill, she knew that her brother had failed and had not delivered it in "his *usual course of business*," made it her duty to inquire into it, and subjected her to all defenses which the drawer could availably make as to the consideration against a party with actual notice of it.

The foregoing principles embody the substance and legal effect of the appellant's defense presented in various forms in his answer. And the circuit court erred in overruling two of

his instructions and modifying two others in a manner either misleading or essentially inconsistent with his rights as hereinbefore defined, and sustained by strong evidence. And, although oral proof had been permitted of the execution of a general assignment to the use of creditors, yet we can perceive no sufficient reason for the refusal by the court to permit the deed itself to be read to the jury, and especially as its provisions could not be well understood by them without reading it.

For the foregoing errors the judgment is reversed, and the cause remanded for a new trial.